# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| GAREN SHAMEYAN,<br><br>                Petitioner,<br><br>    v.<br><br>PAMELA BONDI, in her official capacity as Attorney General; KRISTI NOEM, in her official capacity as Secretary of the Department of Homeland Security; U.S. DEPARTMENT OF HOMELAND SECURITY; WARDEN, ADELANTO DETENTION FACILITY; and JAMIE RIOS, in his official capacity as ICE Field Office Director,<br><br>                Respondents. | Case No. 5:26-cv-00358-SPG-AGR<br><br>**ORDER GRANTING MOTION FOR TEMPORARY RESTRAINING ORDER [ECF NO. 2]** |

    Before the Court is the Motion for Temporary Restraining Order, (ECF No. 2 ("Motion")), filed by Petitioner Garen Shameyan ("Petitioner"). The Court has read and considered the Motion and concluded that it is suitable for decision without oral argument. *See* Fed. R. Civ. P. 78(b); C.D. Cal. L.R. 7-15. Having considered the parties' submissions, the relevant law, and the record in this case, the Court GRANTS the Motion.

## I. BACKGROUND

Petitioner, who is detained at Adelanto ICE Processing Center, filed a Petition for Writ of Habeas Corpus on January 27, 2026, naming as Respondents Pamela Bondi, in her official capacity as Attorney General; Kristi Noem, in her official capacity as Secretary of the Department of Homeland Security ("DHS"); U.S. Department of Homeland Security; Warden, Adelanto Detention Facility; Jamie Rios, in his official capacity as Immigrations, Customs, and Enforcement ("ICE") Field Office Director (collectively, "Respondents"). (ECF No. 1 ("Pet.")).  He requests immediate release from custody on his previously issued Order of Supervision ("OSUP"), and prospective relief preventing his re-detention. (*Id.*).

### A. Factual Background

The following facts are as alleged in the Petition, (Pet.), Petitioner's Declaration in support of the Motion, (ECF No. 2-5 ("Shameyan Decl.")), and Respondents' Declaration opposing the Motion, (ECF No. 8-1 ("Palacios Decl."))[1].

Petitioner is a citizen of the former Soviet Union and was born in Astarak, in what is presently Armenia. (Pet. ¶¶ 2, 15). In 1997, Petitioner entered the United States as a lawful permanent resident. (*Id.* ¶ 3). Prior to his detention, Petitioner lived with his wife and four children, all of whom are United States citizens. (Shameyan Decl. ¶ 8). Petitioner worked as a plumber and financially supported his family. (*Id.*).

#### 1. Petitioner's Previous Removal Proceedings

On or about November 15, 2000, Petitioner was convicted of assault with intent to commit a felony in violation of California Penal Code § 220. (Pet. ¶ 3). In 2006, his assault

---

[1] The Palacious Declaration states that Lourdes Palacious is a Deportation Officer with DHS at the Adelanto ICE Processing Center, and she is the "ICE officer assigned to the case of Gurdeep Singh, hereinafter referred to as Petitioner." (Palacios Decl. ¶ 3). The Declaration thereafter refers to the Petitioner as "Garen Shameyan-Babyan" and states facts relevant to this instant Motion. *E.g.* (*id.* ¶¶ 4–19). Absent evidence to the contrary, the Court will assume the reference to Mr. Singh was made through inadvertence. The Court requests, however, that Respondents take precautions to avoid such unintentional errors in the future.

conviction was vacated, and he was convicted of contributing to the delinquency of a minor in violation of California Penal Code § 272(a)(1). (*Id.*).

In 2005, Petitioner was detained and placed in removal proceedings. (*Id.* ¶ 4). After his applications for asylum and adjustment of status with a waiver under 8 U.S.C. § 1182(h) were denied, on October 5, 2006, Petitioner was ordered removed to Armenia by an Immigration Judge ("IJ"). (*Id.*). Petitioner initially appealed this decision to the Board of Immigration Appeals ("BIA"), but he withdrew the appeal on February 8, 2007, and the decision ordering his removal became final. (Shameyan Decl. ¶ 2). Petitioner was released from ICE custody in or around June of 2007, and he believes he was released because DHS was unable to obtain travel documents to facilitate his removal to Armenia. (*Id.*).

On December 13, 2007, Petitioner was placed on an Order of Supervision ("OSUP"). (Pet. ¶ 6). Under the OSUP, Petitioner was required to "participate and comply with the rules and requirements of the intensive supervision appearance program (ISAP)." (ECF No. 1-2 at 5). Petitioner represents that he complied with all the terms of his release without issue and attended all required check-ins until he was re-detained on January 9, 2026. (Shameyan Decl. ¶ 2).

Around April of 2017, ICE directed Petitioner to apply for a travel document from the Armenian embassy. (*Id.* ¶ 3). Petitioner complied with this instruction, and the Armenian embassy responded that it would not be able to issue a travel document because his citizenship could not be proven, in part because Petitioner was never issued a Republic of Armenia passport. (*Id.*); (ECF No. 1-2 at 7). Petitioner provided the Armenian embassy's response to ICE. (Shameyan Decl. ¶ 3).

### 2. Petitioner's 2026 Re-Detention

On January 9, 2026, during his scheduled check-in with ICE, Petitioner was orally told that he would be re-detained "under the current administration's policies," and thereafter was placed under arrested. (*Id.* ¶ 5). Petitioner asserts that he was not provided with a Notice of Revocation of Release at the time of his re-detention or at any time thereafter, nor was he provided an informal interview prior to his re-detention or told what

changed circumstances warranted his detention. (Pet. ¶¶ 9, 10). On or about January 15, 2026, an ICE officer requested that Petitioner sign a document that was purportedly a request for travel documents. (Shameyan Decl. ¶ 6). Petitioner states that, to his knowledge, ICE has no particularized evidence that he could be deported to Armenia, such that his removal is not reasonably foreseeable. (Pet. ¶¶ 11).

Respondents dispute Petitioner's characterization of his detention proceedings. According to Respondents, on January 9, 2026, Petitioner was taken into custody "pursuant to a properly issued and executed Warrant of Removal/Deportation." (Palacios Decl. ¶ 14 (citing ECF No. 8-3 ("Notice of Revocation"))). Also, Respondents contend on January 9, 2026, Petitioner was served with an OSUP Notice of Revocation of Release, and he was provided an "opportunity to respond to the reasons for the revocation of his OSUP" through an informal interview. (Id. ¶¶ 15, 16). On January 15, 2026, Respondents requested travel documents for Petitioner from the Armenian Consulate. (Id. ¶ 18). Respondents represent that ICE has had "good success in receiving travel document for citizens of Armenia with final removal orders," and it "expects to receive" Petitioner's travel documents. (Id. ¶ 19).

### B. Procedural History

Petitioner filed the Petition on January 27, 2026, seeking immediate release from ICE custody on the OSUP issued on December 13, 2007, and prospective relief preventing his re-detention. (Pet.). He raises three claims for relief: (1) unlawful revocation of release, in violation of the Administrative Procedures Act, 5 U.S.C. § 706(a)(2)(A); (2) violation of procedures for revocation of release; and (3) unlawful detention, in violation of the Due Process Clause of the Fifth Amendment. (Pet. ¶¶ 36–46). The Motion, filed the same day, seeks the same relief. See (Mot.); (ECF No. 2-1 ("Memo") at 7–8).

Upon review of the Petition and Motion, the Court deemed the papers served in accordance with the Agreement of Service as provided in Appendix C of the Central District of California Local Rules, and set a briefing schedule for the Motion. (ECF No. 6). Respondents filed an Opposition on January 29, 2026. (ECF No. 8 ("Opp.")). Petitioner filed a Reply on February 2, 2026. (ECF No. 9 ("Reply")).

## II. LEGAL STANDARD

The standard for issuing a temporary restraining order is essentially the same as that for issuing a preliminary injunction. *See Washington v. Trump*, 847 F.3d 1151, 1159 n.3 (9th Cir. 2017) ("[T]he legal standards applicable to TROs and preliminary injunctions are substantially identical.") (citation omitted). A plaintiff may secure a temporary restraining order upon establishing that: (1) he is likely to succeed on the merits, (2) he is likely to suffer irreparable harm in the absence of preliminary relief, (3) the balance of equities tips in his favor, and (4) an injunction is in the public interest. *Farris v. Seabrook*, 677 F.3d 858, 864 (9th Cir. 2012) (citing *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008)). "[S]erious questions going to the merits and a balance of hardships that tips sharply towards the plaintiff can support issuance of a preliminary injunction, so long as the plaintiff also shows that there is a likelihood of irreparable injury and that the injunction is in the public interest." *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011). "In each case, courts 'must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief.'" *Winter*, 555 U.S. at 24 (citing *Amoco Prod. Co. v. Gambell*, 480 U.S. 531, 542 (1987)). "'In exercising their sound discretion, courts of equity should pay particular regard for the public consequences in employing the extraordinary remedy of injunction.'" *Id.* (citing *Weinberger v. Romero-Barcelo*, 456 U.S. 305, 312 (1982)). Preliminary injunctions serve to "preserve the relative positions of the parties until a trial on the merits can be held, and to balance the equities at the litigation moves forward." *Lackey v. Stinnie*, 604 U.S. 192, 200 (2025) (internal quotation marks and citations omitted).

In deciding an application for a temporary restraining order, the court is permitted to consider the parties' pleadings, as well as declarations, affidavits, and exhibits submitted in support of and in opposition to the application. *See Earth Island Inst. v. Nash*, No. 1:19-cv-01420-DAD-SAB, 2020 WL 1936701, at *6 (E.D. Cal. Apr. 21, 2020) ("[I]n considering a motion for a preliminary injunction, a court may consider and rely upon declarations, affidavits, and exhibits submitted by the parties.") (citations omitted); *Harper*

*v. Poway Unified Sch. Dist.*, 345 F. Supp. 2d 1096, 1119–20 (S.D. Cal. 2004) (considering declarations submitted by defendants to deny plaintiff's request for a preliminary injunction); *BOKF, NA v. Estes*, 299 F. Supp. 3d 1117, 1122 (D. Nev. 2018). "The trial court may give even inadmissible evidence some weight, when to do so serves the purpose of preventing irreparable harm before trial." *Flynt Distrib. Co., Inc. v. Harvey*, 734 F.2d 1389, 1394 (9th Cir. 1984) (citations omitted). The urgency of the relief sought necessitates a prompt determination and can make it difficult to obtain admissible evidence. *Id.*

### III.   DISCUSSION

Petitioner argues that, because his revocation of release and continued detention violates his due process rights and immigration statutes, he should be immediately released on an OSUP. (Memo at 7–8). Respondents oppose, contending that Petitioner's revocation of release and detention proceedings comport with federal regulations, and it is significantly likely that Petitioner will be removed in the reasonably foreseeable future. (Opp. at 2, 6). For the reasons set forth below, the Court finds that Petitioner is likely to succeed on the merits of his claims, and the *Winter* factors weigh in Petitioner's favor.

**A.   Likelihood of Success on the Merits**

The Court first finds that Respondents detained Petitioner in violation of federal regulations and, thus, Petitioner has shown that he is likely to succeed on the merits of his due process claim.

**1.   Statutory Framework**

"Freedom from imprisonment . . . lies at the heart of the liberty" protected by the Due Process Clause. *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001). This liberty interest is vested in "all 'persons' within the United States," including noncitizens, "whether their presence here is lawful, unlawful, temporary, or permanent." *Id.* at 693; *see also Trump v. J.G.G.*, 604 U.S. 670, 673 (2025) ("The Fifth Amendment entitles [noncitizens] to due process of law in the context of removal proceedings.") (internal quotation marks and citation omitted).

Federal immigration law and its attendant regulations govern the procedures for removing noncitizens living unlawfully in the United States, including their detention during removal proceedings. *Johnson v. Guzman Chavez*, 594 U.S. 523, 527 (2021). Enforcement of these procedures has been delegated to the Executive Branch, *LaDuke v. Nelson*, 762 F.2d 1318, 1325 (9th Cir. 1985), *amended*, 796 F.2d 309 (9th Cir. 1986), and in effectuating its duties, "an agency must abide by its own regulations," *Fort Stewart Schs. v. Fed. Lab. Rels. Auth.*, 495 U.S. 641, 654 (1990). Even where agency action is discretionary, an agency's "failure to exercise its own discretion, contrary to existing valid regulations," is a violation of law. *United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260, 268 (1954). Thus, when a noncitizen is ordered removed and detained, immigration officials must act in a manner that comports with principles of due process and applicable federal statutes and regulations. *See Burunsuzyan v. Noem*, No. 5:26-cv-00049-RGK-AGR, 2026 WL 246067, at *3 (C.D. Cal. Jan. 27, 2026) ("[I]mmigration enforcement agencies' failing to comply with federal immigration law when removing or detaining a noncitizen ultimately violates the noncitizen's due process rights.") (citing cases). Failure to follow such regulations is unlawful, the remedy for which "may be injunctive relief, reversal of the agency action, or reversal and remand with an order requiring the agency to follow its own procedures." *Clemente v. United States*, 766 F.2d 1358, 1365 n.10 (9th Cir. 1985).

A noncitizen ordered removed must be removed "from the United States within a period of 90 days." 8 U.S.C. § 1231(a)(1)(A). The government is required to detain the noncitizen for this initial 90-day period for the purpose of effectuating removal. *Id.* § 1231(a)(2)(A). If removal is not effectuated during this period, "the alien, pending removal, shall be subject to supervision under regulations prescribed by the Attorney General." *Id.* § 1231(a)(3). Certain categories of removable noncitizens may be detained beyond the removal period, as delineated in section 1231(a)(6), so long as their detention comports with principles of due process. *See Zadvydas*, 533 U.S. at 689, 701 (holding that due process requires reading in an "implicit limitation" on the duration of detention under

§ 1231(a)(6) and adopting a "presumptively reasonable period of detention" of up to six months).

Once a noncitizen is released pursuant to section 1231(a)(3), their release may be revoked in accordance with federal regulations. First, an individual subject to an order of supervision "who violates any of the conditions of release may be returned to custody and is subject to" certain penalties, including possible criminal prosecution. 8 C.F.R. § 241.13(i)(1); *see also* 8 C.F.R. § 241.4(l)(1). Second, for those who have not violated their conditions of release, the government may "revoke an alien's release under this section and return the alien to custody if, on account of changed circumstances, the Service determines that there is a significant likelihood that the alien may be removed in the reasonably foreseeable future." *Id.* § 241.13(i)(2). Third, certain officials may exercise their discretion to revoke release where (i) the purposes of release have been served; (ii) the alien violated a condition of release; (iii) it is appropriate to enforce a removal order or to commence removal proceedings; or (iv) the conduct of the alien indicates that release would no longer be appropriate. *Id.* § 241.4(l)(2).

When revoking an order of supervision, ICE is required to notify the alien "of the reasons for revocation of his or her release" and to "conduct an initial informal interview promptly after his or her return to Service custody to afford the alien an opportunity to respond to the reasons for revocation stated in the notification." *Id.* § 241.13(i)(3); *see also id.* §§ 241.4(l)(1), (3). If the noncitizen is not released after the informal interview, their continued detention will be subject to a review process "within approximately three months after release is revoked," followed thereafter by periodic reviews as necessary. *Id.* § 241.4(l)(3).

### 2. Analysis

Petitioner argues that the revocation of his OSUP was procedurally improper because (1) Respondents failed to demonstrate changed circumstances existed before his re-detention, in violation of 8 C.F.R. §§ 241.13(i)(2); and (2) he was not served with a Notice of Revocation or provided an informal interview, in violation of 8 C.F.R.

§§ 241.13(h)(4)(i)(2). (Memo at 9–14). Respondents argue that no due process violation exists because, under *Zadvydas*, the government may hold a noncitizen ordered removed "in confinement until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future." (Opp. at 4–5) (quoting *Zadvydas*, 533 U.S. at 701). Respondents also submit exhibits, which purport to demonstrate that Petitioner was served with a Notice of Revocation of Release and that an informal interview was conducted. *See* (Notice of Revocation); (ECF No. 8-4 ("Alien Informal Interview")). Petitioner contends that the Notice of Revocation of Release was not properly served and disputes the authenticity and validity of the document confirming an interview took place. (Reply at 3–9).

In light of these disputes, the Court begins with the following undisputed facts: Petitioner was placed on an OSUP on December 13, 2007, (Pet. ¶ 6); Petitioner complied with the terms of his OSUP without issue, (Shameyan Decl. ¶ 2); ICE detained Petitioner at a regularly scheduled check-in on January 9, 2026, (Palacios Decl. ¶ 14); and ICE requested travel documents for Petitioner to the Armenian Consulate on January 15, 2026, (Palacios Decl. ¶ 18). *See Int'l Molders' & Allied Workers' Loc. Union No. 164 v. Nelson*, 799 F.2d 547, 551 (9th Cir. 1986) ("In deciding a motion for a preliminary injunction, the district court is not bound to decide doubtful and difficult questions of law or disputed questions of fact."). These undisputed facts reflect that ICE did not request travel documents for Petitioner until after he was detained. Respondents thus did not comply with the procedures for revocation of Petitioner's supervised release.

Under 8 C.F.R. § 241.13(i)(2), ICE may revoke Petitioner's OSUP only upon a finding of "changed circumstances," such that there is a "significant likelihood that the alien may be removed in the reasonably foreseeable future." 8 C.F.R. § 241.13(i)(2). Courts do not make the initial determination of changed circumstances. Instead, "[t]o the extent ICE claims that it made such a determination, the court should review that claim in light of the regulations instructing ICE on how it should make such a determination." *Kong v. United States*, 62 F.4th 608, 620 (1st Cir. 2023). When assessing if there is a significant

likelihood of removal in the reasonably foreseeable future, immigration regulations instruct that ICE "shall consider all the facts of the case," including (1) "the history of the alien's efforts to comply with the order of removal," (2) "the history of the Service's efforts to remove aliens to the country in question or to third countries, including the ongoing nature of the Service's efforts to remove this alien and the alien's assistance with those efforts," (3) "the reasonably foreseeable results of those efforts," and (4) "the views of the Department of State regarding the prospects for removal of aliens to the country or countries in question." 8 C.F.R. § 241.13(f).

Here, as stated previously, Petitioner was detained on January 9, 2026. According to the Notice of Revocation, which the parties dispute was issued to Petitioner, Petitioner's "case is under current review by Armenia for the issuance of a travel document," (Notice of Revocation), and there is a significant likelihood that he will be removed in the reasonably foreseeable future. Yet as attested by Lourdes Palacios, the Deportation Officer assigned to Petitioner's case, the travel document request for Petitioner was not sent to the Armenian Consulate until January 15, 2026. (Palacios Decl. ¶ 18). That ICE did not reach out to the Armenian Consulate until a week after Petitioner was detained demonstrates that a determination of changed circumstances did not exist when the Notice of Revocation was issued. Respondents otherwise fail to identify any facts demonstrating that there is a significant likelihood that Petitioner may be removed in the reasonably foreseeable future. Nor have Respondents set forth facts demonstrating that any of the other factors listed in § 241.13(f) support Petitioner's removal. Thus, absent a pre-detention determination of changed circumstances, Petitioner's detention is not authorized by immigration regulations. *See V.K. v. Noem*, No. 5:26-cv-00241-MWC-SK, 2026 WL 246023, at *4 (C.D. Cal. Jan. 25, 2026) (granting TRO where "[b]efore re-detaining [Petitioner], Respondents did not provide him with any written notice explaining the basis for the revocation of his release"); *Uzzhina v. Chestnut*, No. 1:25-cv-01594-DAD-SCR, 2025 WL 3458787, at *4 (E.D. Cal. Dec. 2, 2025) ("[S]imply applying for travel documents after detention is insufficient to show changed circumstances warranting the detaining of a

petitioner."); *Duong v. Charles*, No. 1:25-cv-01375-SKO, 2025 WL 3187313, at *3 (E.D. Cal. Nov. 14, 2025) ("[T]he record does not show that a changed-circumstances determination was made *at or before* Petitioner's re-detention on July 1, 2025. Instead, the record shows that the Government did not even submit a request to Vietnam for travel documents until July 30, 2025—*almost a month after* re-detaining Petitioner.").

Even if ICE had sent the travel document request before issuing the Notice of Revocation, Respondents have not shown that the circumstances regarding Petitioner's ability to be removed to Armenia have changed. ICE previously directed Petitioner to apply for travel documentation from the Armenian embassy in 2017, and his OSUP was not revoked on account of changed circumstances then. *See* (Shameyan Decl. ¶ 3). Respondents do not describe why this present request for travel documentation warrants a finding of changed circumstances when the 2017 request did not. *See Burunsuzyan*, 2026 WL 246067, at *4 (finding that stating a "case is under review by Syria for the issuance of a travel document" did not appear to be changed circumstances that justified revocation of release, in violation of 8 C.F.R §§ 241.4(1)(3) and § 241.13(i)(3), "based on the record of Petitioner's regular check-ins in which immigration officers stated the same for decades"). Officer Palacios's assertion that ICE "has had good success at receiving travel document[s] for citizens of Armenia with final removal orders," and that it "expects to receive" Petitioner's travel documents fails to articulate the basis for why changed circumstances exists for Petitioner. (Palacios Decl. ¶ 19); *see Bui v. Noem*, No. 5:25-cv-03370-RGK-AJR, 2025 WL 4061564, at *3 (C.D. Cal. Dec. 30, 2025) ("[E]vidence that others have been removed, without a specific comparison to Petitioner's case, do little to show that Petitioner, himself, is likely to be removed in the reasonably foreseeable future.").

In addition, Respondents' contention that the Petition is premature under *Zadvydas* because Petitioner was detained for a total of twenty days as of the filing of the Opposition overlooks the "familiar rule of administrative law that an agency must abide by its own regulations." *Fort Stewart Schs.*, 495 U.S. at 654; *see* (Opp. at 5) (citing *Zadvydas*, 533 U.S. at 701). Where a noncitizen has complied with the conditions of release, ICE

regulations do not authorize revocation of an OSUP absent a pre-detention determination of changed circumstances. *See* 8 C.F.R. §§ 241.13(i)(1), (2). Moreover, *Zadvydas* instructs that "if removal is not reasonably foreseeable, the court should hold continued detention unreasonable and no longer authorized by statute." *Zadvydas*, 533 U.S. at 699–700. The record indicates that Respondents attempted to remove Petitioner to Armenia in 2017. *See* (Shameyan Decl. ¶ 3). However, these efforts were unsuccessful because Petitioner was never issued a Republic of Armenia passport. (*Id.*). When Petitioner applied for such documentation, the Armenian embassy could not prove his citizenship, and Petitioner remained released subject to his OSUP. *See* (*id.*); (ECF No. 1-2 at 7). Other than the unsupported assertion that "ICE-ERO has had good success at receiving travel documents for citizens of Armenia," Respondents proffer no facts, documents, or policies indicating why removal is "reasonably foreseeable" to warrant Petitioner's continued detention. *See Burunsuzyan*, 2026 WL 246067, at *5 (granting TRO in part because the government did not rebut petitioner's evidence that his removal was not reasonably foreseeable). Given that the record before the Court does not demonstrate that a determination was made that changed circumstances justified revoking Petitioner's release,[2] ICE's decision to re-detain Petitioner was arbitrary, in violation of 8 C.F.R. § 241.13(i)(2).[3] Accordingly, Petitioner is likely to succeed on the merits of his claim that ICE violated his due process rights. *See Duong*, 2025 WL 3187313, at *5 ("[T]he Government violated Petitioner's due process rights by not complying with its own rule under section 241.13(i)(3)."); *Nazarian v. Noem*, No. 25-cv-02694-KK-ADS, 2025 WL

---

[2] In so concluding, the Court does not make any independent determination of the foreseeability of Petitioner's removal; instead, the Court merely finds that ICE has failed to follow its own regulations when making such a determination. *See Kong*, 62 F.4th at 620.

[3] To the extent Respondents instead seek to rely on the revocation authority in 8 C.F.R. § 241.4 / 8 C.F.R. § 241.13, they have not argued or put forth any evidence that a determination was made by an authorized official as to the existence of any of the conditions listed therein.

3236209, at *4 (C.D. Cal. Nov. 3, 2025) ("Petitioner is likely to succeed on his claim that the revocation of his release and subsequent re-detention violate ICE's own regulations and, thereby, the Due Process Clause.").

### B.   Irreparable Harm

"It is well established that the deprivation of constitutional rights unquestionably constitutes irreparable injury." *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012) (internal quotation marks and citation omitted). "Deprivation of physical liberty by detention constitutes irreparable harm." *Arevalo v. Hennessy*, 882 F.3d 763, 767 (9th Cir. 2018). Immigration detention also imposes collateral irreparable harms on the families of the detainee, including economic burdens and harms to children. *Hernandez v. Sessions*, 872 F.3d 976, 995 (9th Cir. 2017).

Here, as discussed above, Petitioner has been unlawfully detained in violation of ICE's own regulations, depriving him of his due process rights. Petitioner is unable to care for his wife and children while he is detained. (Memo at 16). Petitioner has therefore suffered irreparable harm as a result of his detention and will continue to suffer the harm absent relief. As such, the second *Winter* factor weighs in favor of Petitioner.

### C.   Balance of Equities and Public Interest

When the Government is the party opposing the relief sought, the balance of equities and public interest factors merge. *Nken v. Holder*, 556 U.S. 418, 435 (2009). As the Ninth Circuit has explained, "it is always in the public interest to prevent the violation of a party's constitutional rights," and "[t]he government also cannot reasonably assert that it is harmed in any legally cognizable sense by being enjoined from constitutional violations." *Baird v. Bonta*, 81 F.4th 1036, 1042 (9th Cir. 2023). Given the Court's finding that Petitioner is likely to succeed on the merits of his due process claim, and in the absence of any countervailing interests identified by Respondents, the Court concludes that Petitioner's concrete harms heavily outweigh any interest that Respondents may have. Therefore, the third and fourth *Winter* factors support injunctive relief.

On balance, the *Winter* factors weigh in Petitioner's favor. The Court therefore GRANTS Petitioner's Motion insofar as it seeks Petitioner's immediate release.

## IV.   CONCLUSION

For the foregoing reasons, the Court GRANTS the Motion.

1. Respondents are ORDERED to immediately release Petitioner from ICE custody under an Order of Supervision and restore him to the same supervision conditions and restrictions that existed prior to his re-detention;

2. Respondents are ENJOINED AND RESTRAINED from re-detaining Petitioner absent any of the following: (a) Petitioner's violation of his conditions of release pursuant to 8 C.F.R. § 241.13(i)(1); (b) a showing of changed circumstances under 8 C.F.R § 241.13(i)(2) beyond the mere request for travel documents; (c) a determination by an authorized official that any of the conditions of 8 C.F.R. § 241.4(l)(2) are satisfied; or (d) other circumstances authorizing detention under applicable law; and

3. Respondents are ORDERED TO SHOW CAUSE in writing no later than seven (7) days from the date of this Order why the Court should not issue a preliminary injunction. Petitioner may file a Reply no later than ten (10) days from the date of this Order. The Court sets a hearing on whether a preliminary injunction should issue for Wednesday, February 18, 2026, at 10:00 a.m. The Court will accept a stipulated briefing schedule extending these dates on the condition that the parties agree to an extension of the TRO.

**IT IS SO ORDERED.**

DATED: February 5, 2026

HON. SHER'LYN PEACE GARNETT
UNITED STATES DISTRICT JUDGE