# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| GAREN SHAMEYAN,<br><br>                Petitioner,<br><br>    v.<br><br>PAMELA BONDI, in her official capacity as Attorney General; KRISTI NEOM, in her official capacity as Secretary of the Department of Homeland Security; U.S. DEPARTMENT OF HOMELAND SECURITY; WARDEN, ADELANTO DETENTION FACILITY; and JAMIE RIOS, in his official capacity as ICE Field Office Director,<br><br>                Defendants. | Case No. 5:26-cv-00358-SPG-AGR<br><br>**ORDER PARTIALLY GRANTING REQUEST FOR PRELIMINARY INJUNCTION [ECF NO. 14]** |

     Before the Court is the Request for Preliminary Injunction, (ECF No. 14 ("Request")), filed by Petitioner Garen Shameyan ("Petitioner"). The Court finds the matter suitable for resolution without oral argument. Fed. R. Civ. P. 78(b); C.D. Cal. L.R. 7-15. Having considered the parties' submissions, the relevant law, and the record in this case, the Court partially GRANTS the Request.

## I. BACKGROUND

The Court previously summarized in its TRO Order the facts alleged in the Petition for Writ of Habeas Corpus and incorporates that summary by reference in this order.[1] *See* (ECF No. 12 ("TRO Order")).

In brief, on January 27, 2026, Petitioner filed the Petition and Motion for Temporary Restraining Order, requesting both immediate release from immigration custody on an Order of Supervision ("OSUP") issued on December 13, 2007, and prospective relief enjoining his re-detention absent compliance with federal regulations. *See* (ECF No. 1 ("Petition")); (ECF No. 2 ("TRO Motion")). Petitioner named as Respondents Pamela Bondi, in her official capacity as Attorney General; Kristi Noem, in her official capacity as Secretary of the Department of Homeland Security; the U.S. Department of Homeland Security; the Warden, Adelanto Detention Facility; and Jamie Rios, in his official capacity as Immigration, Customs, and Enforcement ("ICE") Field Office Director (collectively, "Respondents"). (Pet.).

On February 5, 2026, after reviewing the parties' briefing, the Court granted the TRO Motion, ordered Petitioner's immediate release, and ordered Respondents to show cause why a preliminary injunction should not issue. *See* (TRO Order). In so doing, the Court found that Petitioner was likely to succeed on the merits of his due process claim— that Petitioner was detained in violation of federal regulations. First, the Court found that Petitioner had a likelihood of success on the merits because ICE violated its own regulations in re-detaining Petitioner. (*Id.* at 9–13). The Court noted that ICE regulations permit the revocation of supervised release only upon a finding of changed circumstances and require that the detainee be provided with notice of those circumstances and an informal hearing to contest the finding of changed circumstances. (*Id.* at 9–10) (citing 8 C.F.R. § 241.13(i)(2)). Because the identified changed circumstance—the request for travel documentation from the Armenian consulate—post-dated Petitioner's re-detention,

---

[1] The government does not oppose the Court's description of Petitioner's alleged facts, *see* (ECF No. 13 ("Opp.")).

and because Respondents did not show that the circumstances regarding Petitioner's ability to be removed to Armenia changed, the Court found that the decision to re-detain Petitioner was arbitrary and likely violated his due process rights. (*Id.* at 11–12). Second, the Court found that Petitioner had suffered irreparable harm by virtue of his detention in violation of his constitutional rights. (*Id.* at 13). Third, the Court found that the balance of equities and public interest weighed in Petitioner's favor, particularly given the absence of any contrary argument from Respondents. (*Id.*). Based on these findings, the Court ordered Respondents to immediately release Petitioner from ICE custody under an Order of Supervision and restore him to the same supervision conditions and restrictions that existed before his re-detention on January 9, 2026. (*Id.* at 14).

The parties represent that Petitioner was subsequently released from custody on February 5, 2026. *See* (Opp); (Request). Petitioner now seeks to convert the TRO Order to a preliminary injunction, enjoining Respondents from re-detaining him absent compliance with constitutional protections and from placing additional conditions on the terms of his release. (Request at 3). Respondents oppose, arguing that Petitioner's release from custody moots the Petition. (Opp.).

## II. LEGAL STANDARD

The standard for issuing a preliminary injunction is essentially the same as that for issuing a temporary restraining order. *See Washington v. Trump*, 847 F.3d 1151, 1159 n.3 (9th Cir. 2017) ("[T]he legal standards applicable to TROs and preliminary injunctions are substantially identical." (internal quotation marks and citation omitted)). Thus, a petitioner may secure a preliminary injunction upon establishing that: (1) he is likely to succeed on the merits, (2) he is likely to suffer irreparable harm in the absence of preliminary relief, (3) the balance of equities tips in his favor, and (4) an injunction is in the public interest. *Farris v. Seabrook*, 677 F.3d 858, 864 (9th Cir. 2012) (citing *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008)). "[S]erious questions going to the merits and a balance of hardships that tips sharply toward the plaintiff can support issuance of a preliminary injunction," so long as the plaintiff also shows that there is a likelihood of

irreparable injury and that the injunction is in the public interest. *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011) (internal quotation marks omitted). "In each case, courts 'must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief.'" *Winter*, 555 U.S. at 24 (quoting *Amoco Prod. Co. v. Gambell*, 480 U.S. 531, 542 (1987)). "'In exercising their sound discretion, courts of equity should pay particular regard for the public consequences in employing the extraordinary remedy of injunction.'" *Id.* (quoting *Weinberger v. Romero-Barcelo*, 456 U.S. 305, 312 (1982)).

### III. DISCUSSION

In their Opposition, Respondents do not address any of the standards described above for issuing a preliminary injunction. Instead, they assert that "Petitioner's release moots the requested preliminary injunction and this habeas petition more generally." (Opp. at 2). Respondents cite cases in which other courts in this District have dismissed habeas petitions as moot following the issuance of a TRO, but do not offer any other arguments why the Court should not issue a preliminary injunction. *See generally* (*id.*).[2]

### A.  Mootness

Whether Respondents' release of Petitioner from custody pursuant to the TRO Order moots the underlying Petition depends on whether the Petition continues to present a case or controversy under Article III, § 2 of the United States Constitution. "This case-or-controversy requirement subsists through all stages of federal judicial proceedings." *Spencer v. Kemna*, 523 U.S. 1, 7 (1998). Thus, "[t]o maintain an extant claim, a litigant must continue to have a personal stake in the outcome of the suit throughout all stages of federal judicial proceedings." *Abdala v. INS*, 488 F.3d 1061, 1064–65 (9th Cir. 2007) (internal quotation marks and citation omitted). "This means that, throughout the litigation,

---

[2] Respondents have thus conceded that, if the Court finds the case is not moot, a preliminary injunction should issue based on the Court's previous analysis in the TRO Order, which remains the same, given that Respondents have not shown the factual circumstances—other than Petitioner's release—have changed. The Court incorporates its reasoning for the TRO into this Order.

the plaintiff must have suffered, or be threatened with, an actual injury traceable to the defendant and likely to be redressed by a favorable judicial decision." *Spencer*, 523 U.S. at 7 (internal quotation marks and citation omitted).

A habeas petition is not necessarily mooted by the temporary release of a habeas petitioner pursuant to a TRO or preliminary injunction. *See Nielsen v. Preap*, 586 U.S. 392, 403 (2019). These forms of preliminary relief "do not conclusively resolve legal disputes," but instead involve only a determination that "a plaintiff is *likely* to succeed on the merits." *Lackey v. Stinnie*, 604 U.S. 192, 200 (2025). Instead, preliminary relief serves a limited purpose to "preserve the relative positions of the parties until a trial on the merits can be held" and should not be taken as "tantamount to [a] decision[] on the underlying merits." *Univ. of Tex. v. Camenisch*, 451 U.S. 390, 395 (1981). By its own terms, a TRO is only temporary; it involves no final determination of the merits and has no continuing effect beyond the initial 14-day period. *See* Fed. R. Civ. P. 65(b) ("The [TRO] expires at the time after entry—not to exceed 14 days—that the court sets, unless before that time the court, for good cause, extends it for a like period or the adverse party consents to a longer extension.").

Thus, even when a petitioner has obtained preliminary relief, there may still be a live controversy as to any remaining requests for relief. *See Nielsen*, 586 U.S. at 403 (recognizing that an individual released from immigration detention pursuant to a preliminary injunction "faced the threat of re-arrest and mandatory detention" absent a permanent injunction not disturbed on appeal, thus presenting a live controversy). Any contrary rule would force habeas petitioners to choose between seeking immediate release, thereby mooting any requests for prospective relief, or foregoing preliminary relief to receive adjudication of their requests for prospective relief. Habeas relief need not be so limited. *See Preiser v. Rodriguez*, 411 U.S. 475, 487 (1973) ("[H]abeas corpus relief is not limited to immediate release from illegal custody, but [] the writ is available as well to attack future confinement."); *but see Picrin-Peron v. Rison*, 930 F.2d 773, 776 (9th Cir. 1991) (holding that an immigration habeas petition was moot when the petitioner was

released and the government provided a sworn declaration from the Director of the INS, Los Angeles Field Office, attesting that the petitioner, absent certain changed circumstances, would remain on parole).

Based on these principles, the Court finds that the Petition continues to present a live controversy and is not mooted by Petitioner's release on February 5, 2026. First, the TRO Order did not address all the relief requested in the Petition. Petitioner requested several forms of relief, including: (1) immediate release from immigration custody on the conditions in place prior to his detention on January 9, 2026; (2) injunctive relief prohibiting Respondents from revoking his OSUP absent individualized evidence that his removal is reasonably foreseeable, and without providing a determination by an impartial adjudicator that his detention is justified; and (3) injunctive relief prohibiting Respondents from re-detaining him without complying with federal regulations, such as notifying him of the reasons for revoking release, providing an opportunity to rebut those reasons, and providing an informal interview. (Pet. at Prayer for Relief). The TRO Order only addressed Petitioner's request for immediate release based on the Court's finding that Petitioner was likely to succeed on the merits of his due process claim. (TRO Order at 14). The Court did not address Petitioner's requests for prospective, injunctive relief. (*Id.*). Petitioner's request for prospective, permanent relief in the form of an injunction remains. *See, e.g.*, *Esmail v. Noem*, No. 2:25-cv-08325-WLH-RAO, 2025 WL 3030589, at *3 n.5 (C.D. Cal. Sept. 26, 2025) ("Given the TRO's expiration . . . the necessity of further injunctive relief maintaining the status quo during the pendency of litigation means the claim is necessarily *not* moot."); *Min v. Santacruz*, No. 2:25-cv-10971-MEMF-AS, 2025 WL 3764071, at *2 (C.D. Cal. Dec. 23, 2025) ("[T]he TRO, like the requested preliminary injunction, is inherently temporary; neither would outlive this case."); *Cruz v. Lyons*, No. 5:25-cv-02879-MCS-MBK, 2025 WL 3443146, at *2 (C.D. Cal. Dec. 1, 2025) ("A habeas petition is not moot where preliminary relief is not made permanent.") (citing *Nielsen*, 586 U.S. at 403).

Second, Petitioner challenges his re-detention without Respondents compliance with certain due process protections. He represents that when he was detained on January 9, 2026, the arresting agent stated that he was detained pursuant to "the current administration's policies," and revoked his OSUP without following the appropriate procedures. (ECF No. 2-5 ("Shameyan Decl.") ¶ 5). Namely, Petitioner contends that when he was detained, Respondents failed to demonstrate changed circumstances existed before his re-detention, in violation of 8 C.F.R. § 241.13(i)(2), and Respondents did not serve a Notice of Revocation or provide an informal interview, in violation of 8 C.F.R § 241.13(h)(4)(i)(2). *See* (Pet.). Because the parties dispute whether a Notice of Revocation or informal interview was provided, the TRO Order addressed only Respondents' failure to show changed circumstances before re-detaining Petitioner. *See* (TRO Order at 9). Now that Petitioner has been released, Respondents have made no argument and presented no declaration indicating that that the government would comply with the regulations at issue. *Compare* (Opp.) *with Picrin-Peron*, 930 F.2d at 776. For instance, Respondents have proffered no argument that the request for travel documents from the Armenian consulate on January 15, 2026, amounts to changed circumstances regarding Petitioner's ability to be removed to Armenia when the same request in 2017 did not. *See* (TRO Order at 11). Thus, though Petitioner has been released on an OSUP, the threat of Petitioner being re-arrested and detained without the process due remains. *See Min*, 2025 WL 3764071, at *2 (finding that a case was not moot because the government did not "disavow[] their practices, . . . adjust[] their policies, [or] assure[] Petitioner that he is not subject to redetention.").

Third, Respondents' cited cases, in which some sister courts in the Central District have deemed moot requests for a preliminary injunction where petitioners received bond hearings pursuant to a temporary restraining order, are unpersuasive, given the facts and circumstances in this case. (Opp. at 2–3) (citing *Gonzalez v. Noem*, 5:25-cv-02054-ODW-BFM, dkt. no. 16 (C.D. Cal. Aug. 25, 2025); *Mosqueda v. Noem*, 5:25-cv-02304-CAS-BFM, dkt. no. 15 (C.D. Cal. Sept. 16, 2025)). In neither of these cases did the petitioners

request prospective injunctive relief. To the contrary, the petitioners requested immediate release or, in the alternative, a bond hearing pursuant to 8 U.S.C. § 1226(a). *See Gonzalez v. Noem*, 5:25-cv-02054-ODW-BFM, dkt. no. 1 (C.D. Cal. Aug. 7, 2025); *Mosqueda v. Noem*, 5:25-cv-02304-CAS-BFM, dkt. no. 1 (C.D. Cal. Sept. 3, 2025); *compare id. with* (Pet. at Prayer for Relief). These cases are unanalogous here, where Petitioner seeks an order to prospectively enjoin his re-detention.

Therefore, because the TRO Order only offers Petitioner temporary relief and Petitioner seeks prospective relief in the form of an injunction preventing his re-detention absent compliance with federal regulations, this action presents a live controversy. In the absence of any further argument regarding the sufficiency of Plaintiff's showing under *Winter*, the Court adopts the reasoning articulated in the TRO Order and concludes that a preliminary injunction should issue. Petitioner is likely to succeed on the merits of his procedural due process claim, he faces irreparable harm absent injunctive relief, and the balance of the equities and the public interest favor an injunction. *See* (TRO Order).[3]

## IV. CONCLUSION

For the foregoing reasons, the Court partially GRANTS the Request for Preliminary Injunction. For the reasons stated above, the Court ORDERS as follows:

(1) Respondents and all of their officers, agents, servants, employees, attorneys, successors, assigns, and persons acting in concert or participation with them are ENJOINED from re-detaining Petitioner absent compliance with the procedures described in 8 C.F.R. § 241.13(i); and

//
//
//

---

[3] In the Request, Petitioner requests the Court enjoin Respondents from placing additional conditions on the terms of his release, such as electronic monitoring. (Request at 4). This relief was not requested in the Petition or in the TRO Motion, and Petitioner raises no argument in support of this relief. The Court therefore DENIES this requested relief.

(2) The parties are directed to follow the orders of the Magistrate Judge regarding further proceedings related to the underlying Petition.

**IT IS SO ORDERED.**

DATED: February 20, 2026



HON. SHERILYN PEACE GARNETT
UNITED STATES DISTRICT JUDGE